Anderson, J.
Lizzie Leigh Gibson, the plaintiff in error, offered for probate as the last will and testament of Elizabeth S. Holmes, deceased, three several paper writings. Ho. 1 is as follows, to wit:
“I, Elizabeth S. Holmes, do make the following as my last will and testament.
*45 I give all my estate, both real and personal, to my two sisters, Margaret and Sally.
Written and signed by me this 16th day of April, 1851.”
The foregoing is not in the hand-writing of decedent, nor subscribed. About an inch below it on tbe same sheet of paper, is written what is designated as Ho. 2, as follows :
“ As Margaret is dead, I give her share to my niece, Lizzie Leigh Gibson.
(Signed) December 81st, 1871.
E. S. Holmes.”
The foregoing, and the signature, are wholly in the hand-writing of decedent. She died in the city of Petersburg, Virginia, on the 16th of March 1875, leaving both real and personal estate in said city.
The foregoing paper was found on the day, and within a few hours after the death of decedent, in a cloth pocket, which, during health, she was accustomed to carry about her person, and during her last sickness she kept constantly under the pillow of her bed, in which she lay during her sickness, and on which she died. In the same cloth pocket there were . . found other valuable papers belonging to decedent, and it was her habit to keep all her valuable papers in it. At the date of Ho. 1, April 16, 1851, decedent had two sisters, named respectively Margaret and Sarah Holmes, sometimes called Sally; and she was known by that name as well as Sarah. She is now Sarah E. Gibson, one of the defendants in this cause. Said decedent had also a brother named George F. Holmes. *46 Margaret died in the year 1869 without issue. George F. Holmes died the same year, leaving as his sole heirs two children, George B. and Elizabeth S. Holmes, who are defendants. Sarah F. Gibson, now unmarried, and the said two children of George F. Holmes, are the only heirs and distributees of Elizabeth S. Holmes, deceased.
The paper-writing, Ho. 3, seems not to have been offered, in proof, and need not be further noticed.
In order to the validity of a will, the statute requires (Code of 73, ch. 118, § 4,) that it shall be in writing, and signed by the testator, or by some other person in his presence, and by his direction in such manner as to make it manifest that the name is intended as a signature; and unless it be wholly written by the testator, the signature shall be made, or the will acknowledged by him in the presence of at least two competent witnesses present at the same time, who shall subscribe the will in the presence of the testator.
If the writing is signed by the testator in such manner as to make it manifest that the name is intended ■as a signature, and is wholly written by him, it is a valid will, though it be unattested by witnesses.
The writing, Ho. 1, not being wholly in the handwriting of the testatrix, nor attested by witnesses, as required by the statute, is not taken separately and by itself a valid will. Though it was formerly held that ■an unattested will could not derive validity from a codicil duly attested, though the codicil expressly referred to and confirmed the will, that doctrine is exploded; and it seems now to be well settled that ■“ where a codicil is written on the same sheet of paper with a will, the attestation of the codicil, by the requisite number of witnesses, establishes the will, though it 'be not duly attested.” (1 Lomax on Ex’ors, top p. 70, 71, marg. 32.)
*47 In Jarman on Wills, 1 vol., top p. 128, 129, side p. 79, 80, 81, the eases of De Bathe v. Lord Fingal, 16 Ves. R. 167, Doe de Williams v. Evans, 1 Cromp & Mees. R. 42, are cited, where it was held that a codicil duly attested gave validity to the will which was not duly attested. In referring to them the author says: “In both the preceding cases the attested codicil referred to the unattested document; but this is not essential, where both are written on the same sheet of paper.” Again on side, p. 81, he speaks of. the effect of their being united in the same paper, as only being to render unnecessary any express reference to the unattested document for the purpose of identifying it.1
' If, therefore, the writing, No. 2, which is but a codicil to the will, No. 1, had been duly attested by witnesses, according to the doctrine as thus declared, the two writings, No. 1 and 2, would be a valid will. And I apprehend if No. 1 was wholly in the hand-writing of testatrix, even though it had not been signed by her, according to the requisitions of the statute, No. 2, being wholly written and signed by testatrix, would be a confirmation of No. 1 as her will, and together would constitute a valid testamentary disposition of her estate. But No. 1 not being in the hand-writing of the testatrix, could not be made the will of decedent, because, though taken in connection with No. 2, it would not be in conformity with the requirement of the statute, “wholly written by the testator.”
Though No. 1 could not be probated as the will of decedent, I was inclined to the opinion that No. 2 might be, that being on the same paper with No. 1, which had been carefully kept and preserved by decedent until the hour of her death. No. 2 must be regarded as referring to it, and to the bequest made by it to her sister Margaret, by the language, “Margaret *48 is dead, I give her share to my niece, Lizzie Leigh.” Though No. 1 is not authenticated under the statute as a valid will, it is in evidence, and I thought might be referred to, to show who was meant by “ Margaret,” and what was meant by her share. And if it is proper evidence for that purpose, it shows plainly that she was the Margaret to whom the invalid devise had been made, and that her share was a moiety of the estate, real and personal, of the decedent, which, by the writing No. 2, signed and wholly written by the testatrix, she gave to Lizzie Leigh Gibson, and this upon the principle, that “a testator may so construct his disposition as to render it necessary to have recourse to some document (as to any other extrinsic matter) in order to elucidate or explain his intention” (1 Jarm. on Wills, top p. 180, side p. 83); and that such reference is proper, although the document referred to is not in the hand-writing of the testator, nor attested as a will. Ibid & Lomax, ubique. I cannot say therefore that Elizabeth S. Holmes died intestate as to the moiety of her estate, which she gave to her niece, Lizzie Leigh Gibson.
But my brethren regarding No. 2 as too vague and indefinite to be established as a will by itself, and that it cannot be taken in connection with No. 1, as that is not in the hand-writing of decedent, do not concur in this view, and are of opinion that neither No. 1 nor No. 2, nor both together, is a valid will under the statute, and that the judgment of the court below must be affirmed.
The other judges concurred in affirming the judgment.
Judgment aeeirmed.